NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

16-P-1009                                        Appeals Court


COMMONWEALTH  vs.  GEORDI G., a juvenile.


No. 16-P-1009.

Berkshire.       April 11, 2018. - September 20, 2018.

Present:  Sullivan, Lemire, & Ditkoff, JJ.


Delinquent Child.  Assault and Battery.  Probable Cause.
    Intentional Conduct.  Juvenile Court, Delinquent child.
    Practice, Criminal, Juvenile delinquency proceeding,
    Complaint, Arraignment, Dismissal.  Individuals with
    Disabilities Education Act.



Complaint received and sworn to in the Berkshire County
Division of the Juvenile Court Department on January 19, 2016.

A motion to dismiss was heard by Judith A. Locke, J.


Kyle Gray Christensen, Assistant District Attorney, for the
Commonwealth.
Robert Hennessy for the juvenile.


DITKOFF, J.  A school official obtained a delinquency

complaint charging the juvenile with, inter alia, two counts of

assault and battery based on alleged incidents of pushing a

teacher and hip-bumping the principal at his middle school.  See

G. L. c. 265, § 13A (a).  Over the Commonwealth's objection, a judge of the Juvenile Court dismissed these charges for lack of probable cause.  Concluding that the observations of the teacher, the principal, and a school counsellor established probable cause, we vacate the order of dismissal.  We also take this opportunity to remind school officials of their obligation, when seeking a delinquency complaint against a student with an individualized education program (IEP), to make the prosecutor aware of the juvenile's special needs in a timely manner.

Background.[1]  On December 2, 2015, the twelve year old juvenile was in the gymnasium of his middle school at the end of a basketball game.  He refused to follow directions, started swearing at a teacher, and left the gymnasium.  The teacher followed and asked him to come back into the gymnasium, but he refused and ran down the hallway into the atrium.  When the juvenile was asked to go to the office, he stated that he was "not going to the fucking office" and did not want "to talk to any of those assholes."  The teacher tried to calm him down, but he would not calm down or stop swearing loudly.  The principal then came into the atrium and also tried to calm him down.  The juvenile was breathing heavily, had clenched fists and puckered lips, and was visibly upset.  He also punched a cinder block

---

[1] These allegations are those stated in the application for the criminal complaint.  See Commonwealth v. Valentin V., 83 Mass. App. Ct. 202, 203 & n.1 (2013).  They remain unproven.

wall that was behind him.  The teacher was standing in front of the doors to the hallway, and the juvenile pushed the teacher and went through the doors.

After several minutes, other teachers left their rooms and came into the hallway to try to calm down the juvenile.  The principal directed the first teacher to return to her classroom.  Nonetheless, the juvenile became more agitated, punched lockers, and stated that he was going to injure people.  The principal issued a "soft lockdown," which required the students to stay in their classrooms and to delay transitioning to their next classes.  After about ten minutes, the soft lockdown was removed when the group of teachers and the principal were able to convince the juvenile to leave the hallway and to enter the office of the school's adjustment counsellor.

In the counsellor's office, the juvenile was still upset and swearing.  He stepped towards the principal in a threatening manner and, standing face-to-face about one foot away, repeatedly asked, "You're fucking scared of a [twelve] year old?"  The juvenile then walked to the door, bumping the principal with the side of his body, thus moving him.

On December 3, 2015, the assistant principal of the middle school filed an application under G. L. c. 218, § 35A, for a delinquency complaint, alleging that the juvenile committed two counts of assault and battery (one against a teacher and the

other against the principal) and one count of disturbing a school assembly, G. L. c. 272, § 40. The assistant principal made no mention of the juvenile's IEP in the application, and there is no indication that the school otherwise made the prosecutor aware of the juvenile's special needs.

On January 19, 2016, the clerk-magistrate issued a delinquency complaint for all three charges. The juvenile then moved to dismiss the complaint before arraignment. On March 24, 2016,[2] a hearing was held on the motion to dismiss. The judge dismissed the two assault and battery charges for lack of probable cause and arraigned the juvenile on the charge of disturbing a school assembly.[3] The Commonwealth appeals pursuant to Mass. R. Crim. P. 15 (a) (1), as appearing in 422 Mass. 1501 (1996).

Discussion. 1. Probable cause determination. "[W]e review the . . . judge's probable cause determination de novo." Commonwealth v. Humberto H., 466 Mass. 562, 566 (2013), quoting Commonwealth v. Long, 454 Mass. 542, 555 (2009). "[A] motion to

_____

[2] Arraignment was originally scheduled for January 28, 2016, but was rescheduled without objection from the Commonwealth.

[3] With the Commonwealth's apparent consent, the juvenile ultimately received a disposition of pretrial probation on the charge of disturbing a school assembly. After he successfully completed the term of probation, the Commonwealth dismissed the charge. The Legislature has since amended G. L. c. 272, § 40, so that it cannot be used to prosecute a juvenile student for conduct at school. See St. 2018, c. 69, § 159.

dismiss a complaint [for lack of probable cause] 'is decided from the four corners of the complaint application, without evidentiary hearing.'" Id. at 565, quoting Commonwealth v. Huggins, 84 Mass. App. Ct. 107, 111 (2013). "To establish probable cause, the complaint application must set forth 'reasonably trustworthy information sufficient to warrant a reasonable or prudent person in believing that the defendant has committed the offense.'" Id., quoting Commonwealth v. Roman, 414 Mass. 642, 643 (1993). To satisfy the probable cause standard, "more than mere suspicion" is required, but the evidence need not be sufficient to warrant a conviction. Commonwealth v. Cartright, 478 Mass. 273, 283 (2017), quoting Commonwealth v. Jewett, 471 Mass. 624, 629 (2015). Our review of the judge's order of dismissal is confined to the evidence submitted to the clerk-magistrate, see Commonwealth v. Ilya I., 470 Mass. 625, 626 (2015), which is "viewed in the light most favorable to the Commonwealth." Commonwealth v. Levesque, 436 Mass. 443, 444 (2002).

"The complaint application must include information to support probable cause as to each essential element of the offense." Humberto H., 466 Mass. at 565-566. The crime of an intentional assault and battery requires proof that the juvenile "touched the victim without having any right or excuse to do so and that the [juvenile's] touching of the victim was

intentional." Commonwealth v. Mitchell, 67 Mass. App. Ct. 556, 564 (2006). Furthermore, there must be proof either that the touching was "with such violence that bodily harm is likely to result" (harmful battery), Commonwealth v. Eberhart, 461 Mass. 809, 818 (2012), quoting Commonwealth v. Burke, 390 Mass. 480, 482 (1983), or "occurred without the victim's consent" (offensive battery). Eberhart, supra, quoting Commonwealth v. Hartnett, 72 Mass. App. Ct. 467, 476 (2008). Accord Instruction 6.140 of the Criminal Model Jury Instructions for Use in the District Court (2016). Both the teacher and the principal wrote that the juvenile pushed the teacher after arguing with her. The counsellor wrote that she observed the juvenile address the principal in a threatening manner and then bump him with the juvenile's side. Viewed in the light most favorable to the Commonwealth, these accounts provide a sufficient showing of the elements of intentional, offensive assault and battery to warrant a prudent person in concluding that the juvenile committed assault and battery when he pushed the teacher and hip-bumped the principal.

We are unpersuaded by the argument that the juvenile intended only to leave the rooms and to remove himself and thus did not have the requisite intent to touch the teacher and the principal. Prior to pushing the teacher on his way out of the doors to the hallway, the juvenile was disregarding directions,

running away from school staff, and yelling and swearing, continuing to do so even after the teacher and other staff attempted to calm him. Similarly, before bumping into the principal, the juvenile stated that he was going to injure others and then stepped towards the principal in a threatening manner and repeatedly stated, "You're fucking scared of a [twelve] year old?" Although the juvenile may very well have had the primary motivation of removing himself from both situations, based on the circumstances surrounding the incidents, it is a reasonable inference that the juvenile also intended to make contact with the individuals.[4]

2. Prearraignment dismissal based on best interests of the juvenile and in the interests of justice. Relying on the holding in Humberto H., the juvenile contends that, even if the complaint application supports a finding of probable cause, the judge properly exercised her discretion in dismissing the two charges prior to arraignment to protect the best interests of the juvenile and in the interests of justice. We disagree.

The judge based her dismissal on her finding that there was no probable cause to support the charges of assault and battery. Nothing in the judge's decision indicates that she made a

_____

[4] Although the judge references the lack of bodily injury to the teacher and the principal in finding no probable cause, bodily injury is not a necessary element for an intentional assault and battery. See Commonwealth v. Porro, 458 Mass. 526, 529 (2010).

discretionary decision that dismissal was in the best interests of the juvenile and in the interests of justice. To the contrary, the judge allowed the charge of disturbing a school assembly to proceed, suggesting that she viewed prosecution to be in the interests of justice.

Case law issued after the events in question will govern this question if the Commonwealth chooses to proceed. In Commonwealth v. Newton N., 478 Mass. 747 (2018), the Supreme Judicial Court decided that, where a complaint obtained by a police officer is supported by probable cause, a judge cannot dismiss the complaint prior to arraignment even when the judge determines that dismissal before arraignment would serve the best interests of the child and the interests of justice. Id. at 755-757. This is because, "where a complaint is supported by probable cause, the decision to proceed with the prosecution rests in the broad and exclusive discretion of the prosecutor." Id. at 755. The courts expect prosecutors to consider carefully "whether to proceed with the arraignment of a juvenile, even where there is probable cause, and consider whether prosecution will serve the best interests of the child and the interests of justice." Id. at 757.

In Commonwealth v. Orbin O., 478 Mass. 759 (2018), the Supreme Judicial Court held that, where a delinquency complaint is brought by a civilian, the judge may not dismiss the

complaint in the best interests of the juvenile and in the interests of justice if the prosecutor affirmatively adopts the complaint by moving for arraignment.  See id. at 760.  Here, as in Orbin O., the application for complaint was sought by an assistant principal, a civilian.  Accordingly, going forward, if the Commonwealth moves for arraignment, the judge will lack the authority to dismiss the complaint based on the best interests of the juvenile and in the interests of justice.

3.  Prearraignment dismissal based on failure to provide mitigating evidence.  The juvenile contends that the dismissal may be upheld on the ground that the assistant principal was obligated pursuant to Commonwealth v. O'Dell, 392 Mass. 445 (1984), to inform the clerk-magistrate of the juvenile's IEP, and that this failure justified dismissal of the two charges before arraignment.  Under O'Dell, a defendant may move to dismiss a grand jury indictment on the ground that "the integrity of the grand jury proceeding was impaired by an unfair and misleading presentation to the grand jury."  Id. at 446-447. "To justify dismissal of an indictment, a defendant must show that 'inaccurate or deceptive evidence was given to the grand jury knowingly and in order to obtain an indictment and that the evidence probably influenced the grand jury's determination.'" Levesque, 436 Mass. at 456, quoting Commonwealth v. Drumgold, 423 Mass. 230, 238 (1996).  Although there is no general duty to

provide all exculpatory evidence to a grand jury, see

Commonwealth v. Carr, 464 Mass. 855, 868 (2013), a motion to

dismiss may lie where "evidence was withheld in a manner that

distorts the meaning of the evidence admitted, or if the

exculpatory evidence was so powerful it would have severely

undermined the credibility of an important witness or likely

have led the grand jury not to indict."  Commonwealth v. Rakes,

478 Mass. 22, 30 (2017).  The rationale in O'Dell has never been

applied to private complaints or in the prearraignment context.

     We pretermit the question whether O'Dell applies to private

complaints or may be raised prearraignment, as the juvenile's

argument fails for the more fundamental reason:  a motion to

dismiss under O'Dell lies where the withheld evidence, if known

by the finder of probable cause, would likely have resulted in a

finding of no probable cause.  See Rakes, 478 Mass. at 32

(rejecting O'Dell claim where "[t]he appropriately admitted

evidence was more than sufficient to demonstrate probable

cause"); Commonwealth v. Hunt, 84 Mass. App. Ct. 643, 659

(2013), quoting Commonwealth v. McCarthy, 385 Mass. 160, 163

(1982) (reversing order dismissing on O'Dell grounds where

proper evidence "was sufficient 'to establish the identity of

the accused . . . and probable cause to arrest [them]'").

Accord Commonwealth v. Wermers, 61 Mass. App. Ct. 182, 188

(2004).  The juvenile's IEP, although potentially relevant both

at trial and at disposition, could not defeat probable cause. See Newton N., 478 Mass. at 752 ("questions of criminal responsibility and mental impairment are not relevant considerations in determining probable cause").

Nonetheless, the school had a statutory duty, pursuant to the Federal Individuals with Disabilities Education Act, 20 U.S.C. §§ 1400 et seq. (2012) (IDEA), to disclose information relating to the IEP to the prosecutor in order for the Commonwealth to make a reasoned, informed decision whether to move forward with the prosecution. "The IDEA is a complex Federal grant program intended to 'ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs.'" Commonwealth v. Nathaniel N., 54 Mass. App. Ct. 200, 202 (2002), quoting 20 U.S.C. § 1400(d)(1)(A) (Supp. 1999). The IDEA sets forth "substantive and procedural rights designed to ensure achievement of the statutory goals," Nathaniel N., supra, providing Federal funding for States that meet certain conditions. See Kelly K. v. Framingham, 36 Mass. App. Ct. 483, 484 (1994).

Under 20 U.S.C. § 1415(k)(6)(B)(2012),[5] "[a]n agency reporting a crime committed by a child with a disability shall ensure that copies of the special education and disciplinary records of the child are transmitted for consideration by the appropriate authorities to whom the agency reports the crime." Few courts have thus far addressed the requirements of § 1415(k)(6)(B), such as when and to what "appropriate authorities" the records must be provided.  In Nathaniel N., 54 Mass. App. Ct. at 206, we concluded that a delay in providing such records did not, without more, create "one of those rare cases that warrants overriding a District Attorney's authority to decide whether to prosecute a case."

Nonetheless, it is beyond cavil that the IDEA "recognizes that such records would be relevant for placement and dispositional purposes."  Id. at 205.  The purpose of § 1415(k)(6)(B) is to provide such records to help determine whether a crime has been committed by a student that warrants prosecution and what disposition would be appropriate if such a crime were proven.  Decisions regarding whether to prosecute a particular case are within the discretion of the prosecuting authorities of the Commonwealth.  See Victory Distribs., Inc. v. Ayer Div. of the Dist. Court Dep't, 435 Mass. 136, 143 (2001).  Accordingly, it is necessary that the prosecutor, as the

---

[5] Previously 20 U.S.C. § 1415(k)(9)(B) (2000).

appropriate authority, have access to this information in time to exercise this discretion in an informed manner.

Prosecutors have the authority to nol pros a complaint issued under G. L. c. 218, § 35A, before arraignment. See Carroll, petitioner, 453 Mass. 1006, 1006 (2009). This discretionary function is an important prosecutorial duty, particularly in juvenile cases, and one that school authorities need to protect by providing the prosecutor with access to information that weighs on the prosecutor's determination. "[S]ound judgment must be applied in deciding whether a child's misbehavior that is legally within the ambit of the criminal law is so serious that it should be treated as a delinquency complaint in Juvenile Court, rather than as a disciplinary matter that is best resolved within a school, family, or clinical mental health setting." Orbin O., 478 Mass. at 766. Upon reviewing the juvenile's records, which may cast doubt on the juvenile's responsibilities for his actions or present significant mitigating factors, the prosecutor is in a better position to make an appropriate decision about whether proceeding with arraignment is in the best interests of the juvenile and is consistent with the interests of justice. See Newton N., 478 Mass. at 757. Accordingly, we remind school officials that, when seeking a delinquency complaint against a juvenile with an IEP, the school officials should make sure that

the prosecutor has knowledge of the relevant information in time to make an informed decision whether to arraign the juvenile.

In this case, the Commonwealth is now aware of the existence of the IEP and is able to seek other information from the school. We trust that the Commonwealth will carefully consider this information before proceeding further. Guided by this information, it is now within the prosecutor's sound discretion whether to move for arraignment in this case or to consider other alternatives.

Conclusion. The order allowing the motion to dismiss the two assault and battery charges is vacated and the charges are reinstated.

So ordered.